1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOANNE BLIGHT,                          No.  2:15-cv-2513 WBS AC

12                  Plaintiff,

13        v.                                 ORDER

14   CITY OF MANTECA, et al.,

15                  Defendants.

16

17        Plaintiff's pending Motion To Compel (ECF No. 13) was referred to the undersigned by

18   E.D. Cal. R. ("Local Rule") 302(c)(1).  The discovery dispute involves a Search Warrant that

19   authorized the Manteca police to search 5858 E Carpenter Rd. Stockton, CA 95215.  That

20   location was described as:

21              farm property containing two modular homes, chicken coops and a
               small barn and various outbuildings SEE EXHIBIT "D" for exact
22             details of area to be searched      ;  including all rooms, attics,
               basements, and other parts therein, the surrounding grounds and any
23             garages, storage rooms, trash containers, and outbuildings of any
               kind located thereon.
24

25   ECF No. 20-3 at 16 (Exhibit A to the Search Warrant) (emphasis added).  However, in addition to

26   searching the modular home at **5858** E Carpenter Rd, the police searched the modular home at

27   **5846** E Carpenter Rd.  Plaintiff, a 74-year-old woman, lived at the latter address.[1]  According to

28   ───────────────────────
     [1] Any search of the modular home at 5858 E Carpenter Rd. is not at issue here.

                                        1

1  plaintiff, the police broke down her door, entered her home, seized her, detained her on the street,

2  and searched her home.

3      In relation to plaintiff's civil rights claims arising from the search, she seeks discovery

4  about and from the Confidential Informant ("CI") who provided the information upon which the

5  Search Warrant was based.  Plaintiff seeks "Exhibit C" to the Search Warrant affidavit, and

6  testimony from defendant Garcia about what the CI told him.  For the reasons that are set forth

7  below, the undersigned will grant plaintiff's motion in part, but will limit discovery to tightly

8  controlled "Attorneys' Eyes Only" disclosures.

9                                  I.  BACKGROUND

10     On October 9, 2014, defendant Armando Garcia (a detective with the Manteca Police

11 Department), obtained a search warrant for "5858 E Carpenter Rd., Stockton, … a farm property

12 containing two modular homes …," and for Marlin Lee Ford, who lived here.  ECF 20-3 at 16.

13 Garcia submitted a Statement of Probable Cause in support of his request for a search warrant.

14 ECF No. 20-3 at 12-15.  The facts that are claimed to support probable cause for the requested

15 search are contained entirely in Exhibit C to the Statement.  Id. at 12.[2]  Exhibit C, in turn, was

16 sealed by the state court judge who signed the Search Warrant, because, according to defendants,

17 it contains information gleaned from the CI, and its disclosure would identify the CI.

18     The two modular homes described in the search warrant had separate addresses.  Although

19 the search warrant made reference to "two modular homes," it made specific reference to the

20 address of only one of them – 5858 E Carpenter Rd. – not the address where plaintiff lived.  Id.

21 Plaintiff and her husband own the home at 5846 E Carpenter Rd., pay property taxes on it, and

22 have the utilities and telephone line registered under their names, according to plaintiff.  ECF

23 No. 20 (Joint Statement) at 13.  The home has its own mailbox with "5846" on it, and those

24 numbers are "prominently displayed on the front of the residence."  Id.

25     The Statement included Exhibit D, which is apparently a Google Maps printout of the

26 property on which 5858 E Carpenter Rd. sits.  See ECF No. 20-3 at 18.  Apparently, defendant

27

28 _____

[2] The rest of the Statement is about Garcia's general experience, knowledge about marijuana operations, and the reliability of the CI.

2

1    Osborn drew lines around what he considered to be the property to be searched, based upon input

2    from the CI.  It is not clear from the copy of Exhibit D provided to the court, whether the lines

3    included or excluded plaintiff's home, and defendants' counsel stated at the hearing that he does

4    not know where the lines are drawn.

5         Plaintiff sued Garcia, Osborn, the City of Manteca and others, asserting a Section 1983

6    claim for Fourth Amendment violations and asserting state law claims.

7                          II.  THE DISCOVERY DISPUTE

8         A.  Document Requests

9         Plaintiff served the City of Manteca with a request for production of documents which

10   called for, among other things, the production of "all DOCUMENTATION concerning statements

11   of and/or interviews with … informants …."  See ECF No. 20-1 at 21 ¶ 35(b).[3]  It also requested

12   production of "Exhibit C, as referenced in Defendant Armando Garcia's 'Statement of Probable

13   Cause' Affidavit.'"  Id. ¶ 35(c)(i).  Manteca objected to production of Exhibit C on the grounds

14   that it was sealed by the state court judge, and production would therefore violate the court order.

15   Id.  Manteca objected to both requests on grounds of "confidential information privilege and/or

16   government information privilege."  ECF No. 20-1 at 23.

17        Plaintiff served Garcia with a request for production of documents that support the denials

18   in his Answer.  See ECF No. 20-1 at 27 ¶ 28.  Garcia objected on the grounds that the request

19   includes Exhibit C, which was sealed by the state court judge, and production would therefore

20   violate the court order, and also on grounds of "confidential information privilege and/or

21   government information privilege."  ECF No. 20-1 at 27.

22        Plaintiff also requested relevant text messages from Garcia.  ECF No. 20-1 at 31-32 ¶ 38.

23   Garcia objected to producing "two text message exchanges with the confidential informant

24   relating to this incident," on grounds of "confidential information privilege and/or government

25   information privilege."  ECF No. 20-1 at 32.

26   ////

27   _____

28   [3] The actual Request is not reproduced in the Joint Statement.  The citation is to Manteca's
     response, which incorporates the Request.

                                        3

B. <u>Deposition Questions</u>

At his deposition, defendant Garcia was asked questions about what the CI told him, and he declined to answer, citing the governmental privilege and the confidentiality of the informant. <u>See</u> ECF No. 20-1 at 9-11.  Defendant Osborn was asked questions about what the CI told him that led him to believe that the entire property – including 5846 E Carpenter Rd. – was encompassed by 5858 E Carpenter Rd., and he declined to answer, asserting the same privileges. <u>See</u> ECF No. 20-1 at 38, 45.

III.  THE MOTION TO COMPEL

A. <u>Meet and Confer</u>

The parties met and conferred in person and by telephone.

B. <u>The Motion</u>

1. <u>Plaintiff's argument</u>

Plaintiff's theory of the case is that defendants are liable under the Fourth Amendment for the search and seizure at her home because: (1) the search warrant was over-broad in that it included a search of her home ("two modular homes"), which had nothing to do with defendants' marijuana investigation (ECF No. 20 at 32-34); (2) the search warrant failed the "particularity" requirement because it did not specify that her home was to be searched ("5858 E Carpenter" only) (<u>id.</u>); and (3) the search warrant resulted from judicial deception, since defendants included her house in the search warrant without telling the judge that her house had nothing to do with the investigation (<u>id.</u> at 34-35).  Plaintiff argues that she needs to know what the CI told the police, and what is in Exhibit C, because that is the only way to prove her theories.

Regarding over-breadth, if defendants knew that there were two residences on the property, they were obligated to exclude plaintiff's property from the warrant if they had no probable cause for a search of her home.  <u>See</u> <u>Maryland v. Garrison</u>, 480 U.S. 79, 85 (1987) ("[p]lainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant," because there was no probable cause to search the respondent's apartment).  That is because the warrant "must be no

4

1   broader than the probable cause on which it is based."  United States v. Weber, 923 F.2d 1338,

2   1342 (9th Cir. 1990).

3        Plaintiff argues that discovery is needed on this theory because:

4        Defendants Garcia and Osborn arbitrarily designated a large parcel
         of land the object of their search in an aerial picture they found on
5        Google, representing to the Magistrate that the entire parcel was
         "5858 Carpenter Rd.," when, in fact, Plaintiff's separate residence
6        at 5846 Carpenter Rd. was included in the boundary lines
         Defendants drew. Yet, there was no probable cause to search
7        Plaintiff's residence.

8   ECF No. 20 at 33.

9        Regarding particularity, plaintiff has a "Fourth Amendment right to a warrant describing

10  with sufficient particularity the location to be searched …."  Navarro v. Barthel, 952 F.2d 331,

11  332 (9th Cir. 1991) (per curiam), cert. denied, 504 U.S. 966 (1992).  Further, "the right to be free

12  from a search of the wrong place, even when executed pursuant to a warrant, is secured by the

13  Fourth Amendment."  Id. at 333.  Put another way, "[t]he Warrant Clause categorically protects

14  against unreasonable searches of places inadequately described."  Id.

15       Regarding judicial deception, omission of material facts from a search warrant affidavit

16  can form the basis for a Fourth Amendment claim.  Bravo v. City of Santa Maria, 665 F.3d 1076

17  (9th Cir. 2011) (reversing summary judgment against Section 1983 plaintiff where police omitted

18  material fact from search warrant affidavit).

19            2.  Defendant's argument

20                 a.  Unsealing the affidavit

21       Defendants' objection to producing their copy of Exhibit C to the Search Warrant

22  Affidavit is premised upon their assertion that they cannot produce it or reveal its contents,

23  without violating the state court order that sealed Exhibit C.  Further, they argue that this court

24  lacks jurisdiction to order the state court to unseal the Garcia affidavit, citing Casler v. Bressler,

25  221 F. App'x 553, 554 (9th Cir. 2007) (memorandum),  United States v. Olson, 2015 WL

26  4509429, 2015 U.S. Dist. LEXIS 97136 (D. Nev. 2015), and United States v. Henson, 123 F.3d

27  1226, 1238 (9th Cir. 1997).

28  ////

5

1    The premise is incorrect.  The state court's sealing order does not even purport to have

2    anything to do with documents that are not judicial records physically filed in court, nor with the

3    information contained in those documents, even if they are filed in court.  Rather, as is the case

4    with sealing records in federal court, the sealing procedure allows the parties to file a document

5    *with the court* without concern that the public's First Amendment right to view judicial

6    documents will enable that physical document to be viewed by the public.  See Nixon v. Warner

7    Communications, Inc., 435 U.S. 589, 597 (1978) ("[i]t is clear that the courts of this country

8    recognize a general right to inspect and copy public records and documents, including judicial

9    records and documents"); United States v. Index Newspapers LLC, 766 F.3d 1072, 1084 (9th Cir.

10   2014) ("[p]ursuant to the First Amendment, there is a presumed public right of access to court

11   proceedings").  Indeed, California law independently deems documents that are filed with

12   California courts to be judicial records that are open to public inspection.  Bauguess v. Paine, 22

13   Cal. 3d 626, 637 (1978) ("[a]s a part of the judicial record, exhibits may be inspected by the

14   public as well, absent some specific lawful order to the contrary").  This includes "[t]he

15   documents and records of the court relating to the [search] warrant …."  Cal. Penal Code § 1534

16   ("if the warrant has been executed, the documents and records shall be open to the public as a

17   judicial record").

18   Defendants rely upon Casler v. Bressler, 221 F. App'x 553, 554 (9th Cir. 2007)

19   (memorandum) for their argument that the affidavit, in whoever's hands, cannot be produced

20   without an order from the state court unsealing it.  There are several problems with defendants'

21   reliance on Casler.  First, Casler is an unpublished memorandum decision, which may not be

22   cited *as precedent* in this Circuit.  9th Cir. R. 36-3(a) ("[u]npublished dispositions and orders of

23   this Court" may be cited, under Fed. R. App. P. 32.1(a), but generally, they "are not precedent").[4]

24   Second, even if this court could rely upon Casler, that case did not hold that the district court

25   lacks the authority to obtain the affidavit sealed by the state court.  Instead, the court stated only

26   that plaintiff "has failed to direct the court towards any authority that suggests . . . that the district

27

28   [4] The exceptions to the "no precedent" rule do not apply here.

court possesses such a power."  Id.  Third, in Casler, plaintiff was attempting to get the affidavit directly from the state court's file, not a document in defendants' possession.  See Casler v. Bressler, 1:2-cv-5763 AWI DLB, ECF No. 54 (E.D. Cal. March 21, 2005).  The district court held that it did not have the power to order the state court to unseal the affidavit.

Here, plaintiff wants *defendants* to turn over a document in *their* possession.  Therefore there is no need for this court to order anything to be unsealed, nor to presume any authority over any state court.[5]

### b. Confidential informant privilege

Defendants argue that the confidential informant privilege prevents them from producing Exhibit C, disclosing the contents of Exhibit C, and disclosing what the CI told them.  They argue that they may not disclose *any* information relating to the CI without disclosing his identity.  ECF No. 20 at 46-50.

There is such a privilege, although it is more commonly known as the "informer's privilege."

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of

---

[5]  In Olson, the United States sought production of a document held by the Nevada Attorney General, that had been ordered sealed by a Nevada state court.  2015 WL 4509429 at *1, 2015 U.S. Dist. LEXIS 97136 at *1.  The district court held that the magistrate judge did not err in holding that the federal court has no authority to order the state AG to produce the documents despite the sealing order.  The magistrate judge had ruled that "the principles of federalism, comity, and abstention do not allow a federal court to review a state court decision."  2015 WL 4509429 at *1, 2015 U.S. Dist. LEXIS 97136 at *3-4.  Assuming Nevada's law is functionally identical to California's in this area, the undersigned respectfully disagrees that ordering a defendant to produce a copy of a document in his possession requires a review of state court action, if the original is among the court's sealed records.  In Henson, a criminal case, defendant tried to introduce into evidence the confidential informant's probation report, that had been sealed by the state court.  123 F.3d at 1237.  The district court ordered the report excluded until defendant had first "attempted to have the report unsealed in the appropriate California court."  Id.  The Ninth Circuit did not hold that defendant must first seek unsealing in state court, rather it held only that the district court did not abuse its discretion in ruling "that the state court remedies must be exhausted first."  Id. at 1238.

1
2

> crimes  to law-enforcem ent  officials  and, by preserving their
> anonymity, encourages them to perform that obligation.

3  Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted); United States v. Spires, 3

4  F.3d 1234, 1238 (9th Cir. 1993) ("[t]he government has a limited privilege to withhold an

5  informant's identity").

6          There are two limitations on this privilege that apply here: (1) "where the disclosure of the

7  contents of a communication will not tend to reveal the identity of an informer, the contents are

8  not privileged," id.at 60; (2) "[w]here the disclosure of an informer's identity, or of the contents

9  of his communication, … is essential to a fair determination of a cause, the privilege must give

10  way," id. at 60-61.  However, Roviaro also states:

11

> Most of the federal cases involving  this limitation on the scope of
> the informer's privilege have arisen  where the legality of a search

12

> without a warrant is in issue and the communications of an informer
> are  claimed  to establis h  probable cause.  In these cases the

13

> Government  has been required to      disclose  the identity  of  the
> informant  unless there was sufficient eviden    ce  apart from   his

14

> confidential communication.

15  Id. at 61 (1957).  Although there is a search warrant in this case, the question is still whether the

16  information from the CI provided probable cause to support it.

17          c.          Analysis

18      The issue is one of balance.

19

> We  believe  that no f  ixed rule with respe   ct  to disc losure  is
> justifiable.  The problem  is one  that calls for ba lancing the public

20

> interest  in  protecting  the  flow  of  information  against the
> individual's right to prepare his defense.

21

22  Roviaro, 353 U.S. at 62.  Here, both sides have made strong cases.

23          Garcia's declaration (some of which is redacted from the public docket) states that

24  disclosure of the CI's identity would impede ongoing police efforts, since the search at issue here

25  "is part of an open investigation."  ECF No. 20 at 47.  Also, the CI is an "active" CI, and

26  disclosure would "prevent the CI's use in any future criminal investigation."  Id.  The CI would

27  be at physical risk, as would be his family, if his identity were disclosed.  Id. at 48-49.  Also, the

28  ////

1   CI has proven to be reliable, according to Garcia.  Without reviewing Exhibit C, however, the

2   court has no way to assess Garcia's assertions.

3          On the other hand, the *entirety* of defendants' showing of probable cause to search

4   plaintiff's home, if there is any, is contained in Exhibit C.  None of that probable cause appears in

5   the materials defendants have filed with the court, including Garcia's declaration, and even

6   including the redacted portion of it.  Meanwhile, the entirety of plaintiff's case is that there was

7   no probable cause to search her home or seize and detain her:

8              Plaintiff needs information concerning the alleged inform ant … to
              question the alleged informant [and] to be able to  evaluate, respond
9              to, and test the Defendants' apparent contention that the informant's
              words provided probable cause to obtain a warrant that the[y] claim
10             covered  Plaintiff's separate resi   dence  and, thus, justified them
              forcibly  entering her hom  e,  extracting her, detaining her, and
11             searching her home.

12   ECF No. 20 at 21.  Accordingly, plaintiff's ability to obtain a "fair determination" of her case

13   depends upon (1) the contents of Exhibit C, because that is what the state judge based the Search

14   Warrant on, and (2) what the informant told defendants, and what defendants told the state judge,

15   because that goes to the reasonableness and legality of defendants' conduct in seeking the

16   warrant.

17          Certainly, this court has the authority to compel production of Exhibit C, and the

18   information provided by the CI, despite the informer's privilege, if disclosure is warranted on

19   balance.  Roviaro, 353 U.S. at 62 (calling for "balancing" the needs of law enforcement and the

20   needs of litigation); see Mitchell v. City of Pittsburg, 2012 WL 92565 at *2, 2012 U.S. Dist.

21   LEXIS 3954 at *5-6 (N.D. Cal. 2012) (ordering defendants to "disclose the identity of the witness

22   [a confidential informant] subject to a protective order," after conducting the "balancing"

23   analysis).

24          The undersigned concludes that the best way to balance the competing interests here is to

25   compel a redacted production of Exhibit C, and answers to the challenged deposition questions

26   about information provided by the CI, but subject to a tightly drawn protective order.  The

27   redactions will cover directly identifying information about the CI, plaintiffs' counsel having

28   stated at the hearing that, for now, plaintiff will not press for the identity of the CI.  There has

9

1     been no showing that plaintiffs' counsel cannot comply with the terms of a protective order

2     enjoining him from sharing with anyone any information gleaned pursuant to that order.

3     However, plaintiffs' counsel disclosed at the hearing on this matter that plaintiff is the mother of

4     Mr. Ford, whose person and home (at 5858 E Carpenter Rd.) was the main focus of the search.

5     Accordingly, an "Attorneys' Eyes Only" protective order will be used.

6                                  IV.  CONCLUSION

7           For the reasons stated above, IT IS HEREBY ORDERED that plaintiff's Motion To

8     Compel (ECF No. 13), is GRANTED, but limited as follows:

9             1.  The parties shall submit a stipulated Attorneys' Eyes Only Protective Order – or

10                 separate proposed orders if they cannot agree – no later than 30 days from the date

11                 of this order, to cover the confidential production of Exhibit C, and deposition

12                 questions involving the CI.  The stipulation shall also refer to and incorporate the

13                 manner in which documents may be filed with the court if they contain

14                 information gleaned from Exhibit C, or about the CI.  See Local Rules 141

15                 (sealing documents), 141.1 (confidential information).

16             2.  The parties shall submit a stipulation and proposed order modifying the discovery

17                 deadlines to accommodate discovery permitted by this order.

18             3.  Upon this court's signing of the Attorneys' Eyes Only Protective Order,

19                 defendants, pursuant to that order and within 30 days:

20                      a.  Shall produce a redacted version of Exhibit C to plaintiff.  Defendants may

21                        redact *only* the CI's name, and directly identifying information, such as

22                        address, social security number, physical description, and the like.

23                        Defendants may *not* redact any other matter, even if they believe it may

24                        point to the CI, such as information that only the CI would know.

25     ////

26     ////

27     ////

28     ////

b. Shall produce Garcia and Osborn to answer deposition questions regarding the CI, other than questions eliciting directly identifying information, notwithstanding any invocation of the informer's privilege.

DATED: November 04, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11